**Robert H. CASH, Plaintiff,**

v.

**FREDERICK & COMPANY, INC., a Wisconsin corporation, Defendant.**

**Civ. A. No. 70–C–354.**

United States District Court, E. D. Wisconsin.

Nov. 30, 1972.

---

William H. Alverson, Milwaukee, Wis., for plaintiff.

Bruce C. O'Neill, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a motion pursuant to Rules 9(b) and 12(e) of the Federal Rules of Civil Procedure that plaintiff be ordered to furnish a more definite statement of his claim as set forth in his amended complaint. The motion further seeks to have certain portions of the complaint stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

The complaint is brought by a stock purchaser against his brokerage firm. It is alleged that in 1969 plaintiff purchased 900 shares of Dynasonics Corporation stock through defendant at a cost of $6,326.71. The plaintiff further alleged that at the time this action was brought these shares had a market value of $787.50. Plaintiff asks a recovery of $5,539.21—representing the difference between his purchase price and the stock's current value.

The other allegations relevant to this motion are set forth in four paragraphs of the complaint which defendant has challenged as deficient. That portion of the complaint states as follows:

"12. Defendant through its agent, Plazak, violated Secs. 10(b) and 15(c) of the Securities Exchange Act of 1934 and Rules 10b–5, particularly clause (2), and 15c1–2 adopted thereunder, by making statements of material facts which Plazak knew or should have known were untrue and by not disclosing certain other material facts in connection with the purchase of a security by Plaintiffs.

"13. Plaintiffs were damaged by numerous misrepresentations and nondisclosures by Defendant concerning Dynasonics and the market; including Dynasonics' financial condition, earnings, future price rises and the source of the company's stock being sold which misrepresentations and nondisclosures were made for the purpose of inducing Plaintiffs to purchase the shares of Dynasonics. Plaintiffs purchased such shares believing the representations to be true. Plazak's and Defendants' [sic] representations of the above-mentioned material facts concerning Dynasonics lacked factual or historical basis and were not founded upon a diligent or independent investigation. Further, Plaintiffs were never informed by Defendant or otherwise of contradictory information regarding Dynasonics, of the inherent uncertainties of the situation, or of the untried speculative and risk-oriented nature of the investment.

"14. Defendant occupied a position of trust and confidence with respect to the Plaintiffs, but breached its fiduciary duty to Plaintiffs. Defendant's recommendation to Plaintiffs that they invest in Dynasonics was in contravention of the National Association of Securities Dealers Rule No. 15, which provides that a broker's recommendations be 'suitable' for his customers in terms of the risks, their needs and their situation. Plaintiffs were not in the high-risk or speculative account category and thus Dynasonics stock was not a suitable investment for them.

"15. Plaintiffs relied on Defendant for advice in investment securities, and Defendant represented itself as an authority on the securities it recommended and on the general market condition. Plaintiffs, under Rule 10b–5, had the right to rely on the as-

sumption that Defendant made a diligent investigation of Dynasonics Corporation and that it would make a full disclosure to its customers regarding such investigation and deal fairly with them."

The defendant argues that the complaint must be made more definite because paragraphs 12, 13, and 15 failed to set forth the specific misrepresentations and omissions with which defendant is charged and because paragraphs 13 and 15 failed to set forth in what respect defendant's said investigation was neither diligent nor independent. He also argues that paragraphs 14 and 15 be stricken as redundant, immaterial, and impertinent.

For purposes of these motions I will be concerned only with the alleged violation of Rule 10b–5 of the Securities and Exchange Commission [17 C.F.R. § 240.-10b–5 (1970)] which provides:

"It shall be unlawful for any person, directly or indirectly, by the use *of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,*

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make *any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,* or

"(c) To engage in any act, practice, or course of business which operates or would operate as a *fraud or deceit* upon any person, in connection with the purchase or sale of any security." (Emphasis added.)

## MOTION FOR A MORE DEFINITE STATEMENT

The defendant's Rule 12(e) motion to make the complaint more definite is based on Rule 9(b), Federal Rules of Civil Procedure, which requires that " * * * the circumstances constituting fraud * * * shall be stated with particularity."

In opposing the motion, the plaintiff first contends that a complaint based on 10b–5 is not subject to the particularity requirement of Rule 9(b). He argues that 9(b) is limited to actions based on common law fraud, while the present action based on Rule 10b–5 of the Securities Exchange Commission (hereafter "SEC") does not require proof of fraud.

To accept plaintiff's reasoning would require a ruling that 10b–5 provides for liability without a need to show fraud in private actions.

The scope of liability in private actions brought under Rule 10b–5 has been the subject of intense debate by courts as well as commentators. Originally it was generally assumed that the rule was designed as an SEC policing device to deter conduct tantamount to fraud, but when 10b–5 was accepted as a basis for a private action, a question arose over what behavior was within the scope of the rule. Essentially, two alternatives to liability only for fraud have been suggested—strict liability and negligence. It has been offered that the language of the second clause creates absolute liability for any untrue statement of material fact or a material omission. Texas Continental Life Insurance Co. v. Bankers Bond Co., 187 F.Supp. 14, 23 (W.D.Ky. 1960), rev'd on other grounds, 307 F.2d 242 (6th Cir. 1962); Comment, U.Chi. L.Rev. 824, 833 (1965). This notion has not been widely accepted. However, the negligence theory has been held in higher esteem, and it is primarily on this basis that plaintiff argues that Rule 9(b) does not apply to his complaint.

Widely quoted in support of the negligence position is Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), cert. denied sub nom. Kline v. Securities

and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). In broad language, the majority said:

"* * * However, whether the case before us is treated solely as an SEC enforcement proceeding or as a private action, proof of a specific intent to defraud is unnecessary. In an enforcement proceeding for equitable or prophylactic relief, the common law standard of deceptive conduct has been modified in the interests of broader protection for the investing public so that negligent insider conduct has become unlawful. [Citing cases.] A similar standard has been adopted in private actions, [citing cases] for policy reasons which seem perfectly consistent with the broad Congressional design '* * * to insure the maintenance of fair and honest markets in * * * [securities] transactions.' [Citing cases.]

"Absent any clear indication of a legislative intention to require a showing of specific fraudulent intent, [citing cases] the securities laws should be interpreted as an expansion of the common law both to effectuate the broad remedial design of Congress [citing cases] and to insure uniformity of enforcement [citing cases]. Moreover, a review of other sections of the Act from which Rule 10b–5 seems to have been drawn suggests that the implementation of a standard of conduct that encompasses negligence as well as active fraud comports with the administrative and the legislative purposes underlying the Rule. Finally, we note that this position is not, as asserted by defendants, irreconcilable with previous language in this circuit because 'some form of the traditional scienter requirement,' [citing case] (emphasis supplied), sometimes defined as 'fraud,' [citing case] is preserved. This requirement whether it be termed lack of diligence, constructive fraud, or unreasonable or negligent conduct, remains implicit in

this standard, a standard that promotes the deterrence objective of the Rule." 401 F.2d at 854–855.

Relying primarily upon this statement, Batchelor v. Legg & Co., 52 F.R. D. 553 (D.Md.1971), more precisely held that a negligence standard of liability was sufficient for 10b–5 private actions' for damages.

However, in *Texas Gulf Sulphur*, supra, Judge Friendly's concurring opinion strongly urged that a negligence standard should be limited to cases where injunctive relief was sought and should not be extended to a claim for damages. 401 F.2d at 867–868. A majority of the court appeared to support this dictum. See A. Bromberg, Securities Law: Fraud, § 7.2(4)(e), n. 50.3. Accordingly, subsequent cases have heeded this opinion, holding that fraud must be demonstrated for a recovery in a private action. Shemtob v. Shearson, Hammill Co., Inc., 448 F.2d 442, 445 (2d Cir. 1971); Matheson v. White, Weld & Co., 53 F.R.D. 450 (S.D.N.Y.1971).

The status of a negligence standard appears equally uncertain in the Seventh Circuit. In Kohler v. Kohler Co., 319 F.2d 634, 637 (7th Cir. 1963), the court in dictum said Rule X–10b–5 (the predecessor to Rule 10b–5) "was meant to cover more than deliberately and dishonestly misrepresenting or omitting material facts which ordinarily are badges of fraud and deceit." Later in the opinion the court suggested a standard which used negligence language but never characterized it as such:

"The statute and the rule basically call for fair play and abstention on the part of the corporate insider from taking unfair advantage of the uninformed outsider or minority stockholder. Such a standard requires the insider to exercise *reasonable and due diligence* not only in ascertaining what is material as of the time of the transaction but in disclosing fully those material facts about which the outsider is presumably uninformed

and which would, in *reasonable anticipation,* affect his judgment." 319 F. 2d at 642. (Emphasis added.)

Making the leap from this dictum to a holding that Rule 10b–5 supports a negligence standard of liability faces more obstacles than might readily appear however. Court language interpreted as favoring a negligence standard has primarily addressed itself to the question of scienter—the intent to defraud element—which is thought necessary for proof of common law fraud. Clearly, the trend in private actions under 10b–5 is away from insisting upon proof of scienter. Globus v. Law Research Service, Inc., 418 F.2d 1276, 1291 (2d Cir. 1969). Yet to join this movement is not necessarily synonymous with abandoning fraud as the basis of recovery under Rule 10b–5. It now appears that a fraud action itself no longer requires scienter, but is fast becoming satisfied with proof that, considering all the circumstances, the defendant did not act as would the ordinarily prudent person to avoid misrepresentations, either express or by omission. Note, 63 Mich.L.Rev. 1070, 1079 (1965); United States v. Schaefer, 299 F.2d 625, 629 (7th Cir. 1962); Stevenson v. Barwineck, 8 Wis. 2d 557, 99 N.W.2d 690 (1959) (Fairchild, J.). Thus, it is possible that courts which have spoken in negligence language have not totally departed from a fraud theory but are only reflecting a basic liberalization in the concept of fraud itself.

Moreover, several courts which have rejected the necessity for proving scienter have failed to draw consistent distinctions among the three clauses of Rule 10b–5. Mann, Rule 10b–5: Evolution of a Continuum of Conduct to Replace the Catch Phrases of Negligence and Scienter, 45 N.Y.U.L.Rev. 1206, 1208 (1970). Seemingly, if a court applies a less strict standard for the entire rule, in the face of clear fraud language of clauses one and three, it does not wish to remove 10b–5 from a general

characterization as a fraud rule. On the other hand, to apply special pleading rules for 10b–5(2) which are not applicable to the other clauses would create a disparity inconsistent with the congressional purpose that has kept these three rules under one section since originally drafted as § 17 of the Securities and Exchange Act of 1934.

Plaintiff, however, urges precisely one of these two positions in holding that Rule 9(b) does not apply to his Rule 10b–5 action. Although the plausibility of such a rule has been noted, A. Bromberg, supra, at § 11.8, pp. 263–264; Ellis v. Carter, 291 F.2d 270, 275 n. 5 (9th Cir. 1961), I know of no decision which has adopted such view. I am likewise unable to adopt such a position.

Amidst the contradiction and confusion over the proper standard for 10b–5, I find it inappropriate to rule on this important matter in such an indirect fashion. The applicability of 9(b) cannot be decided until it is conclusively determined that 10b–5(2) need not be a fraud action. On the state of the record in this case, I am unable to make that determination.

■ In light of the varying positions on the liability under 10b–5(2), I believe the most sensible conclusion is that there is no single standard. Neither scienter nor negligence is apropos for all situations; the liability standard is flexible and can only be decided in the context of specific facts presented in a particular case. Mann, supra; A. Bromberg, supra, at § 8.4(581), p. 204.212. The proper standard can vary with factors such as the plaintiff's ability to protect his own interests, Kohler v. Kohler Co., supra, 319 F.2d at 642, the parties' respective involvement in initiating the transaction, Mann, supra, at 1219, and the defendant's motivation to complete the transaction, Aetna Casualty & Surety Co. v. Paine, Webber, Jackson & Curtis (1969–1970 Transfer Binder) CCH Fed.Sec.L.Rep. ¶ 92,712 at 99, 276 (N.D.Ill.1970). (In this case the

court held a broker is not liable under a negligence standard for a disinterested sale to a customer.)

On the state of the record in the case before me, without even the benefit of a responsive pleading, I cannot find the facts necessary to determine what standard of liability would be appropriate. While I believe the trend away from requiring scienter to be a proper one, I cannot at this time state conclusively no element of fraud need be shown.

■ Plaintiff's second contention is that even if Rule 9(b) does apply, the complaint is sufficiently definite to satisfy the rule. Defendant suggests, however, that the allegations of misrepresentation and nondisclosure were not supported by circumstances sufficiently definite for defendant to form a responsive pleading.

I hold that the complaint when looked at in its entirety provides sufficient information to meet the particularity requirement of 9(b).

■ A proper complaint should plead the time, place, and contents of the false representations to satisfy 9(b). C. Wright & A. Miller, 5 Federal Practice and Procedure, § 1297, p. 403 (1969). Defendant's concern is with the adequacy of alleging contents. Admittedly, plaintiff's complaint is sparse when compared with what has been deemed satisfactory in other cases. E. g., Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 760–761 (D.Colo.1964), where the complaint alleged nine specific affirmative misrepresentations, and in a separate claim it alleged nine specific omissions. But orderliness and quantity of allegations do not determine the adequacy of a complaint for purposes of a motion for a more definite statement. If the complaint pleads enough detail to give adequate notice for a responsive pleading, there is no cause to grant defendant's motion. C. Wright & A. Miller, supra, at § 1298, p. 415.

Plaintiff's initial claim in paragraph 13 for misrepresentations and nondisclosures concerning "financial condition, earnings, future price rises and the source of the company's stock being sold" would perhaps by itself be insufficient factual allegation. However, in the same paragraph the plaintiff made two assertions more direct in nature. The complaint alleged first that defendant never informed plaintiff of "inherent uncertainties" or the "speculative and risk-oriented nature of the investment," and second, that it failed to provide information based on a diligent or independent investigation.

■ The investigation allegation is ambiguous as to whether it asserts that no proper investigation was conducted or that information gleaned in a suitable investigation was improperly withheld. However, defendant is in a position to know what type, if any, investigation was made of Dynasonics. If an investigation did take place, the defendant can also determine whether all the relevant data it revealed was made known to the plaintiff. Moreover, a broker's failure to conduct a proper investigation and to inform a potential purchaser of its findings could in itself be a basis for liability under 10b–5. Note, 63 Mich.L.Rev. 1070, 1079 and n. 45 (1965).

The plaintiff's second allegation concerning the uncertain and speculative nature of Dynasonics' economic future is clarified and supported by paragraph 14. There the complaint alleges in essence that defendant failed to disclose that Dynasonics was a high risk firm and therefore unsuitable for plaintiff. Whether this claim is sufficient to find liability under 10b–5 is not at issue here. Defendant has challenged the definiteness of the assertion, and I hold the allegation meets the particularity requirement of 9(b). Courts in other jurisdictions have held even less factual support for a claim to be sufficient to meet 9(b). Miller v. Bargain City, U.S. A., Inc., 229 F.Supp. 33, 40 (E.D.Pa.

1964); Dack v. Shanman, 227 F.Supp. 26, 29 (S.D.N.Y.1964). Also see Note, 63 Mich.L.Rev. 1070, 1080 (1965). I believe this allegation is clear enough for defendant to form a responsive pleading.

## MOTION TO STRIKE

Defendant's second motion to strike paragraphs 14 and 15 of the complaint is also denied.

■ The ruling on the motion for a more definite statement has already indicated that the allegations in paragraph 14 relating to the impropriety of advising plaintiffs to invest in Dynasonics' stock are necessary to support the claim of nondisclosure and misrepresentation. Defendant has argued that reference to the standards of the National Association of Securities is improper because in the instant case such violation does not provide a basis for liability. Without ruling on the merits of this contention, I believe defendant has misinterpreted the value of this allegation. The alleged violation of the NASD Rules of Fair Practice is relevant, not to form the basis of an action but to suggest what duty the defendant had to the plaintiff. Since violation of a known obligation appears to be a substitute for scienter regardless of whether a negligence standard of liability is formally adopted for 10b–5, plaintiff's assertion that defendant did breach such an obligation is proper.

For similar reasons I hold the allegations in paragraphs 14 and 15 which allege breach of fiduciary duty and plaintiff's reliance on defendant's representations to be proper portions of the complaint. Defendant's argument is twofold: first, that asserting fiduciary duty improperly described the parties' relationship and, second, that such a duty is irrelevant to plaintiff's primary contention and prejudicial to defendant.

■ Plaintiff's allegation of fiduciary duty between stockbroker and purchaser is not novel. See Securities and Exchange Commission v. Capital Gains Bureau, 375 U.S. 180, 191, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); Mann, supra, at 1210. However, if defendant believes such a relationship does not exist, either as a matter of law or in the particular context of this case, he may refute it. However, a 12(f) motion to strike is not the proper procedure to place plaintiff's pleadings in issue.

■ Defendant's second contention that the allegations are unrelated to the action is also without merit. Regardless of whether liability is framed in terms of negligence, common law fraud, or some standard between the two, the duty of defendant to make certain facts known is of major importance to plaintiff's case. The strictures of this duty in turn hinge upon the relation of the parties. A. Bromberg, supra, at § 8.-4(581), p. 204.212; Comment, U.Chi.L. Rev. 824, 842–843. A defendant must exercise a higher standard of care when he knows or has reason to know that the plaintiff has relied almost exclusively upon his advice. Kohler v. Kohler Co., supra, 319 F.2d at 642; Mann, supra, at 1209, 1210, and 1214; A. Bromberg, supra, at § 8.6(2), p. 210; Note, 63 Mich. L.Rev. 1070, 1079 and n. 44. It is precisely plaintiff's allegation that as a purchaser he did and had reason to rely on defendant's advice.

Defendant has incorrectly interpreted the reliance claim as a factual allegation standing alongside nondisclosure and misrepresentation. I do not interpret the claim in that fashion. Rather, it is an allegation which relates to the standard of liability to govern the case should plaintiff successfully prove there had in fact been misrepresentations and omissions. Even under a negligence test, the defendant's liability would be limited to those misrepresentations or omissions which violated a duty owed to the plaintiff. The reliance claim merely helps ascertain the scope of that duty. The point is made clearer by the fact that courts often substitute the term materi-

ality for reliance. A. Bromberg, supra, § 8.6(1), p. 209. Clearly, materiality of the omitted or misrepresented fact is a prerequisite to a finding of liability, not a basis for liability within itself.

In this prospective, the allegations of paragraphs 14 and 15 relating to reliance and breach of fiduciary duty are properly included in the complaint.